**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES ROBERT SCHOLL, | : | Civil No. 1:22-CV-01426 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| LONNIE J. OLIVER, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

<u>**MEMORANDUM**</u>

Before the court is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 filed by James Robert Scholl ("Petitioner"). (Doc. 1.) The court finds that Petitioner's challenges based on sufficiency of the evidence and ineffective assistance of trial counsel for failing to call character witnesses are not meritorious. In addition, Petitioner raises more ineffective assistance of trial counsel challenges and multiple constitutional challenges to his underlying criminal conviction. (Doc. 1.) It appears that Petitioner has attempted to raise these additional issues *pro se* multiple times before the state court, but despite his attempts, these issues are procedurally defaulted, and the merits of these issues will not be addressed by the court. For these reasons, the court will deny the petition.

## PROCEDURAL HISTORY

Petitioner is a self-represented litigant who filed a petition for writ of habeas corpus in this court in September of 2022, seeking relief from his state court judgment. (Doc. 1.)

Turning to the underlying state court convictions, Petitioner was found guilty of three counts of aggravated assault (attempt to cause serious bodily injury), three counts of aggravated assault (attempt to put official in fear of serious bodily injury), one count of prohibited possession of a firearm, three counts of terroristic threats with intention to terrorize another, three counts of simple assault, three counts of recklessly endangering another person, one count of resisting arrest, and one count of harassment following a jury trial in March of 2014. *Commonwealth v. Scholl*, CP-14-CR-0001683-2013 (Ct. Com. Pl. Centre Cnty.).

Petitioner filed a direct appeal, and the Superior Court of Pennsylvania affirmed the convictions but remanded for re-sentencing because the trial court had improperly imposed a mandatory minimum sentence. *See Commonwealth v. Scholl*, 251 A.3d 1208, 2021 WL 798891 at *1 (Pa. Super. Mar. 2, 2021). The Supreme Court denied allowance of appeal in February 2016. On March 16, 2016, the trial court re-sentenced Petitioner to 16 to 32 years of imprisonment. *Id.*

Petitioner filed a *pro se* petition under the Pennsylvania Post Conviction Relief Act ("PCRA") in March of 2016. *Id.* The petition raised ineffective

assistance of counsel stating "[trial counsel] asked the jury to convict me of all charges during the closing argument [and] to impose a consecutive sentence at the sentencing hearing" and constitutional issues including the failure of the police to knock and announce.  (Doc. 24-2, pp. 3–4.)[1]  The PCRA court appointed counsel, who filed an amended petition stating "[i]n addition to the allegations raised in his *pro se* Petition, Petitioner seeks a new trial on the grounds that trial counsel was ineffective because she failed to call character witnesses and the Petitioner testified on his own behalf at trial."  (Doc. 24-3, p. 3.)

A hearing was held on November 3, 2017, and Petitioner's counsel offered the following in her opening statement: "We have had several conferences with the trial judge regarding this matter and in one of those conferences it was determined that the only outstanding issue that may have merit and does need to have testimony on the record is the issue of the failure to call character witnesses." (Doc. 24-4, p. 4.)  Petitioner and trial counsel then testified at the hearing, and the PCRA court denied the petition on December 6, 2017.  (Doc. 24-4; Doc. 10-1, pp. 70–74.)  The PCRA court decision only addressed the issue of ineffective assistance of trial counsel based on the failure to call any character witnesses.  (*Id*.)

Petitioner appealed to the Pennsylvania Superior Court alleging that the PCRA court erred in denying relief and finding the trial counsel was not ineffective

---

[1] For ease of reference, the court utilizes the page numbers form the CM/ECF header.

for failing to call character witnesses at the time of trial. *Scholl*, 2021 WL 798891 at *1–2. The court has reviewed Petitioner's brief on appeal, and the only issue addressed on appeal was the alleged ineffective assistance of counsel for failing to call character witnesses. Appellate Brief, *Commonwealth v. Scholl*, No. 357 MDA 2020, 2020 WL 7647007 (Pa. Super. Aug. 7, 2020). In a March 2, 2021 decision, the Superior Court affirmed the PCRA court's denial of the petition. *Scholl*, 2021 WL 798891 at *1–3. Petitioner filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on September 28, 2021. *Commonwealth v. Scholl,* No. 126 MAL 2021, 263 A.3d 1137 (S. Ct. Pa. Sep. 28, 2021).

While the initial PCRA appeal was pending, Petitioner filed another *pro se* PCRA petition on November 29, 2018. (Doc. 24-5.) This PCRA petition again raised the issues of ineffective assistance of counsel and constitutional claims raised in the initial PCRA petition that went unaddressed after counsel was appointed. (*Id.*) Pursuant to an opinion and order in the Court of Common Pleas of Centre County, this November 29, 2018 petition was deemed untimely and denied for that reason. (Doc. 10-1, pp. 33–35.) Petitioner appealed this order on July 4, 2019. (*Id.*) According to the docket sheet of the appeal, the case was discontinued at Petitioner's request. *Commonwealth v. Scholl*, No. 165 MDA 2019 (Pa. Super.)

4

In November of 2021, Petitioner filed yet another *pro se* PCRA petition. (Doc. 24-7.)  This petition again raised the issues set forth in the initial PCRA petition that went unaddressed by the state court following the appointment of counsel.  (*Id.*)  The court will refer to this as the "second PCRA" because that is how the state court proceedings refer to it in the following procedural summary:

> The PCRA court appointed Counsel, who filed an amended PCRA petition asserting several constitutional violations, including a claim that trial counsel had argued in favor of his conviction during closing arguments, and a possible suppression issue.  Counsel did not address the timeliness of Scholl's second PCRA petition.  The Commonwealth answered and argued that the petition was facially untimely, did not state a timeliness exception, and, in any event, raised previously litigated claims.  The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition as untimely.  Counsel did not respond. The PCRA court dismissed Scholl's second petition on August 9, 2022, and Scholl timely appealed.  The PCRA court ordered a Pa.R.A.P. 1925(b) statement, and Counsel timely filed a statement of her intent to file a *Turner/Finley* letter brief in the appeal. *See* Pa.R.A.P. 1925(c)(4).
>
> Counsel filed in this Court a petition to withdraw from representation and a *Turner/Finley* letter brief concluding that Scholl's second PCRA petition was time-barred.  This Court determined Counsel minimally met the procedural requirements to seek withdrawal but directed Counsel to file a corrected petition to withdraw, advise Scholl of his appellate rights, and provide him a copy of her *Turner/Finley* letter brief.  *Commonwealth v. Scholl*, —— A.3d ——, 2023 WL 5014628 (Pa. Super. 2023) (unpublished memorandum at *3).  Following additional orders from this Court, Counsel has complied.

*Commonwealth v. Scholl*, No. 1328 MDA 2022, 2023 WL 7104445 at *1–2 (Super. Ct. Pa. Oct. 27, 2023).  Petitioner filed a *pro se* response asserting that his underlying PCRA claims have merit and requesting the appointment of new

counsel.  *Id*. at *2.  On October 27, 2023, the Pennsylvania Superior Court affirmed the second PCRA court's finding that the second petition was untimely, granted counsel's petition to withdraw as counsel, and denied Petitioner's request for new counsel as moot.  *Id*. at *4.

While this second PCRA petition was pending, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this court on September 5, 2022.  (Doc. 1.)[2]  The petition seeks review of the following issues: (1) sufficiency of the evidence; (2) ineffective assistance of trial counsel; and (3) various constitutional challenges.

Respondents timely filed a response on November 1, 2022, asserting that the issues raised by Petitioner were unexhausted and that the petition was untimely.  (Docs. 10, 10-2.)  Petitioner did not file a traverse.  The court reviewed the response, and on December 28, 2023, ordered Respondents to file a response addressing the timeliness of the petition considering the March 16, 2016 resentencing and address the underlying merits of the petition.  (Doc. 12.)

Petitioner then filed a traverse on March 5, 2024, simply arguing that the second PCRA petition was not untimely.  (Doc. 20.)  On March 28, 2024,

---

[2] The petition was received and filed in this court on September 13, 2022.  However, the petition states that Petitioner placed it in the prison mailing system on September 5, 2022.  (Doc. 1, p. 14.)  Therefore, under the prisoner mailbox rule, the filing date is September 5, 2022.  *See Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (noting that "[t]he federal 'prisoner mailbox rule' provides that a document is deemed filed on the date it is given to prison officials for mailing (citing *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir.1998)).

6

Respondents filed the requested response conceding that the Section 2254 petition filed in this court was timely.  (Doc. 21.)  All issues having been briefed, the court will now address the Section 2254 petition.

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced.  28 U.S.C. § 2241(d).  Petitioner was convicted and sentenced in Centre County, Pennsylvania, which is located in this district.  Therefore, venue in this district is proper.

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings."  *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief in state court criminal prosecutions is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."

*Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d). Petitioner bears the burden under this standard of review.

*Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")

## DISCUSSION

In the second response, Respondents have agreed that the petition is timely. Therefore, the court will address each of Petitioner's three challenges in turn.

## A. The Sufficiency of the Evidence Challenge Has No Merit.

Petitioner's initial challenge to his conviction is the sufficiency of the evidence.  (Doc. 1, p. 5.)  He challenges the sufficiency of the evidence underlying the three convictions for aggravated assault and the conviction for resisting arrest with the following assertions: (1) there was no bullet or round in the chamber; (2) the police officers did not sustain any serious bodily injury; (3) he did not know that the officers were outside the residence; (4) he would have had ample opportunity to inflict serious bodily injury if he intended to harm the police officers; and (5) there was insufficient evidence to prove that he was resisting arrest.  (Doc. 1, p. 5.)

Petitioner initially raised the issue of the sufficiency of the evidence concerning the three convictions for aggravated assault to the Pennsylvania Superior Court.  (Doc. 21-3, pp. 6–10.)  In the June 2, 2015 Superior Court decision, the state court rejected this argument:

> Under Section 2702(a)(1), a person may be convicted of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S. § 2301.  "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another."  *Commonwealth v. Gray,* 867 A.2d 560, 567 (Pa. Super.

2005), *appeal denied,* 583 Pa. 694, 879 A.2d 781 (Pa.2005).  Such intent may be proven circumstantially.  *Commonwealth v. Rightley,* 421 Pa.Super. 270, 617 A.2d 1289, 1295 (Pa. Super. 1992).

Scholl claims "[t]he evidence was insufficient to prove beyond a reasonable doubt that [he] possessed the requisite specific intent to cause serious bodily injury to Officer Chambers, Sergeant Albright, and Officer Shaffer, and that he took a 'substantial step' towards inflicting serious bodily injury." Scholl's Brief, at 21. Specifically, Scholl argues that he

> never fired the gun, nor did he ever attempt to discharge the gun. Upon examination, the clip or magazine contained one single round. There were no rounds in the chamber as the firearm was unprimed.  In order for [Scholl] to actually fire the gun, he would have had to rack the slide with his hand to chamber a round from the clip or magazine into the chamber. [Scholl] never uttered any verbal threats to fire the gun or to harm the officers.  In fact, from the time the trailer door opened until he was placed in handcuffs, [Scholl] did not say anything at all.

*Id.* at 28, 617 A.2d 1289 (record citations omitted).  In support of his argument, Scholl cites to case authority for the proposition that the mere act of pointing a gun at another, without more, does not constitute aggravated assault. *See* Scholl's Brief at 25–28, citing *Commonwealth v. Matthew,* 589 Pa. 487, 909 A.2d 1254 (Pa. 2006), *Commonwealth v. Alford,* 880 A.2d 666 (Pa. Super. 2005), and *Commonwealth v. Savage,* 275 Pa. Super. 96, 418 A.2d 629, 632 (Pa. Super. 1980).

In *Alford,* the defendant, a jail escapee, was convicted under § 2702(a)(1) of aggravated assault after he pounded on a woman's door, was refused entry, and then momentarily pointed a gun through her front-door window, after which she fled the house through the back door.  In reversing that conviction, this Court noted, "It is well settled that merely pointing a gun at another person in a threat to cause serious bodily injury does not constitute an aggravated assault."  880 A.2d at 671; *see also Savage, supra.*

*Alford* was followed by our Supreme Court's later pronouncement in *Matthew, supra.* In *Matthew,* the defendant was convicted of aggravated assault under § 2701(a)(1) after he first placed a loaded gun against the victim's throat, continued to restrain the victim throughout the encounter by pointing the gun at him, and threatened to kill him. The Supreme Court upheld the sufficiency of the evidence supporting that conviction. The *Matthew* Court reaffirmed that the totality of the circumstances are examined to determine if a defendant demonstrated the intent to inflict serious bodily injury. *Matthew,* 909 A.2d at 1258. The Court concluded that the defendant "attempted to inflict serious bodily injury upon [the victim] and intended to do so" in light of the fact that he "placed a loaded gun against [the victim's] throat, repeatedly pointed it at him, and threatened to kill him seven to ten times." *Id.* at 1258. Significantly, the *Matthew* Court continued that, if the "threats alone were not enough to establish his intent, the fact-finder could determine his intent from pushing the loaded gun against [the victim's] throat and otherwise pointing it at him." *Id.* at 1259.

Here, the trial court rejected Scholl's argument, as follows:

> The evidence showed [Scholl] pointed the loaded weapon at the officers. The Court acknowledges this alone is insufficient to infer the specific intent to injure required for aggravated assault. However, when combined with the testimony of [Scholl's] finger on the trigger and continued attempts to direct the firearm at the officers, the evidence was sufficient to establish the required intent to cause serious bodily injury . . . to the officers. The mere fact that the officers were able to overpower [Scholl] and take the weapon from him before he was able to fire it does not negate his actions nor the intent they demonstrate.
>
> Further, the act of pointing the loaded gun with his finger on the trigger and his continuing attempt to direct the weapon at officers while they were attempting to disarm him was also [a] substantial step toward perpetrating serious bodily injury upon them. Again, simply because the officers were able to overpower [Scholl] and stop him from firing the weapon does not negate the intent demonstrated by his actions. Therefore, the evidence is

> sufficient to support the "intent" and "substantial step" elements. . . .

Trial Court Opinion, 5/21/2014, at 5 (citation omitted).  Based on our review, we agree with the trial court that Scholl's sufficiency challenge fails.

> "Where the intention of the actor is obvious from the act itself, the [fact-finder] is justified in assigning the intention that is suggested by the conduct." *Matthew,* 909 A.2d at 1259 (citation omitted).  The evidence showed Scholl pointed the loaded gun at three police officers, redirecting it at each one individually.  Scholl kept his finger on the trigger of the gun and refused to disarm even though police ordered him to drop the weapon 25 or 30 times. N.T., 3/24/2014, at 64.  The officers wrestled Scholl on the ground for approximately 30 seconds to a minute before seizing the gun from him.  The gun had one bullet in the clip or magazine.  This evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to support the jury's conclusion that Scholl had the intent to cause serious bodily harm to the officers, and that he took a substantial step towards inflicting serious bodily injury, as required by Section 2702(a)(1). Therefore, Scholl's first argument warrants no relief.

(Doc. 21-3, pp. 7–10.)

The "clearly established Federal law" governing sufficiency of the evidence claims is set forth in the United States Supreme Court's decision in *Jackson v. Virginia*: "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. 307, 319 (1979).  This is consistent with the standard used by the Superior Court in reviewing Petitioner's sufficiency of the evidence challenge set forth above.  *See Evans v. Court of Common Pleas,*

*Delaware Cnty.*, 959 F.2d 1227, 1233 (3d Cir. 1992) (noting that the test for

sufficiency of the evidence is the same under both Pennsylvania and federal law).

Because the Superior Court applied the correct legal standard, its adjudication

satisfies review under the "contrary to" clause of § 2254(d)(1).

This court next considers whether the trial court's decision amounted to an

"unreasonable application" of *Jackson*.  The Supreme Court has further addressed

the standard set forth in *Jackson*:

> *Jackson* claims face a high bar in federal habeas proceedings because
> they are subject to two layers of judicial deference.  First, on direct
> appeal, "it is the responsibility of the jury. . . to decide what conclusions
> should be drawn from evidence admitted at trial.  A reviewing court
> may set aside the [trial court's] verdict on the ground of insufficient
> evidence only if no rational trier of fact could have agreed with the [trial
> court]." *Cavazos v. Smith*, 565 U.S. 1 (2011).  And second, on habeas
> review, "a federal court may not overturn a state court decision
> rejecting a sufficiency of the evidence challenge simply because the
> federal court disagrees with the state court.  The federal court instead
> may do so only if the state court decision was 'objectively
> unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766 (2010)).
>
> - - -
>
> [T]he only question under *Jackson* is whether [the state court's] finding
> was so insupportable as to fall below the threshold of bare rationality.
> The state court of last review did not think so, and that determination
> in turn is entitled to considerable deference under AEDPA, 28 U.S.C.
> § 2254(d).

*Coleman v. Johnson*, 566 U.S. 650, 651–56 (2012).

Here, the state court's finding included pertinent footnotes that further

addressed evidence that supported the jury's factual findings:

Officer Shaffer testified: "The gun was sort of moving around in front of everybody's face as [Scholl] was attempting to struggle to keep hold of the weapon while Officer Chambers was trying to remove it from his hands." N.T., 3/24/2014, at 56. He further stated that the gun "came right across my face at least once[.]" *Id.* Sergeant Albright testified that Scholl pointed the gun at Officer Chambers and at himself. *Id.* at 89, 91, 96. Officer Chambers also testified that Scholl pointed the gun at him, "a foot from his face." *Id.* at 118.

(Doc. 21-3, p. 9.)

While we acknowledge Scholl's argument that no bullet was in the chamber of the gun, the magazine did contain one live round. Scholl indicated to police he had taken the pistol and put the magazine in it, thereby intentionally loading the weapon. *See* N .T., 3/24/2014, at 148, 162 (Commonwealth Exhibit 5), 223. Had Scholl operated the slide, chambering the round, he could have fired the gun. The actions of the police in placing their hands on the weapon prevented that from happening.

(Doc. 21-3, p. 10.)

Here, Petitioner's entire argument is contained in a bulleted list in the

petition:

- No bullet or round in the chamber
- Officers did not sustain any Serious Bodily Injury
- I did not know that officers were outside my residence
- I would have had Ample Opportunity to inflict S.B.I. if it was my intent to harm police officers

(Doc. 1, p. 5.) The traverse further fails to address the evidence considered or

provide any rationale as to why or how the evidence the trial court relied upon in

affirming the jury's verdict was "objectively unreasonable" as required in *Jackson*.

(Doc. 20.) Instead, Petitioner raises the question, "[i]s there any medical proof the

officers actually suffered Serious Bodily Injury?"  (*Id*, p. 5.)  Petitioner then fails to

address the question in briefing, leaving the court to assume this is a rhetorical

question intended to solidify his argument.  (*Id*.)  However, as the trial court noted,

18 Pa.C.S. § 2702(a)(1) only requires the attempt to cause serious bodily injury

with a minimum *mens rea* of recklessly.  (Doc. 21-3, p. 6.)  Considering this, the

court finds that the state court's decision was not objectively unreasonable, and

Petitioner's sufficiency of the evidence challenge fails.

Next, Petitioner challenges the sufficiency of the evidence to support the

conviction of resisting arrest.  (*Id*., pp. 10–12.)  His petition contains a single

sentence in support of his assertion: "Insufficient evidence to prove that I was

resisting arrest."  (Doc. 1, p. 5.)  Again, in the June 2, 2015 Superior Court

decision, the state court rejected this argument:

> A defendant may be convicted of resisting arrest if he, "with the intent
> of preventing a public servant from effecting a lawful arrest or
> discharging any other duty, . . . creates a substantial risk of bodily injury
> to the public servant or anyone else, or employs means justifying or
> requiring substantial force to overcome the resistance."  18 Pa.C.S. §
> 5104.  This statutory language "does not require the aggressive use of
> force such as a striking or kicking of the officer."  *Commonwealth v.*
> *McDonald,* 17 A.3d 1282, 1285 (Pa. Super. 2011) (quotations and
> citation omitted), *appeal denied,* 611 Pa. 680, 29 A.3d 372 (Pa. 2011).
> We note, initially, that a lawful arrest is an element of resisting arrest,
> *Commonwealth v. Jackson,* 592 Pa. 232, 924 A.2d 618, 620 (Pa. 2007),
> and that, in this case, police had probable cause to arrest based upon
> Scholl's actions when he confronted police.  With regard to the
> remaining elements, Scholl claims he did not create a "substantial risk
> of bodily injury" to the officers or require "substantial force" to
> overcome.  Scholl's Brief at 31.

15

We recognize that, in general, a "minor scuffle" is insufficient to support a charge of resisting arrest. *Commonwealth v. Rainey,* 285 Pa.Super. 75, 426 A.2d 1148, 1150 (Pa. Super. 1981). However, the evidence in this case showed more than a minor scuffle. Officer Shaffer testified that after the officers had wrested the gun from Scholl, Scholl continued to "actively resist" and he had to use a "shoulder lock." N.T., 3/24/2014, at 63. Officer Shaffer explained that Scholl was "wrestling trying to keep us from being able to get his hand . . . tensing up . . . keeping us from being able to get control of it . . . and we're just trying to wrench his hands to get them into a position where we can actually apply handcuffs at that point." *Id.* He further testified that Scholl "did not acquiesce to anything until we finally had a handcuff on one hand and had him rolled over and bellied out." *Id.* at 64, 426 A.2d 1148. Sergeant Albright confirmed that Scholl "was actively resisting . . . even after Officer Chambers got the firearm away[,]" and that "Officer Shaffer was the one who was actually able to arm bar [Scholl]." *Id.* at 106, 426 A.2d 1148. Likewise, Officer Chambers also testified that after he took hold of the gun from Scholl and stood up, the struggle continued. *See id.* at 123, 426 A.2d 1148. He estimated that after the gun was removed from Scholl, it took "maybe another 30 [seconds] to get him secured[.]" *Id.* at 121, 426 A.2d 1148.

The statutory language of Section 5104 criminalizes resistance behavior that requires substantial force to surmount. Although Scholl cites Sergeant Albright's testimony that Scholl may have just been struggling in the limited space of the trailer to get his arms behind his back, and that had he truly felt Scholl was resisting arrest, he would have tasered him, our standard of review requires that we view the evidence in the light most favorable to the Commonwealth as verdict winner. Here, we conclude that the evidence was sufficient for the jury to conclude that the officers had to employ substantial force to overcome Scholl's resistance, and to find him guilty of resisting arrest. *See Commonwealth v. Thompson,* 922 A.2d 926, 928 (Pa. Super. 2007) (appellant guilty of resisting arrest where she would not allow police officer to handcuff her and refused order to put her hands behind her back; officer's efforts to restrain her left him exhausted). Accordingly, this claim likewise fails.

(Doc. 21-3, pp. 10–12.)

Again, the court finds that the state court used the appropriate standard in reviewing the sufficiency of the evidence challenge: "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  Also, the court has reviewed the testimony relied upon by the state court in the jury trial transcript, Doc. 24-1, and determined that the state court's decision was not objectively unreasonable.  Therefore, this sufficiency of the evidence challenge has no merit.

## B. The Ineffective Assistance of Trial Counsel Challenges Cannot Succeed.

Petitioner alleges ineffective assistance of trial counsel in four specific aspects of representation: (1) failing to introduce character witnesses at trial; (2) asking the jury to convict Petitioner on all charges during closing argument; (3) asking for a consecutive sentence during the sentencing hearing; and (4) demonstrating prejudice.  (Doc. 1, p. 6.)  Only Petitioner's initial challenge regarding character witnesses is exhausted and will be addressed by the court on the merits.  The remaining three challenges are procedurally defaulted and will not be addressed on the merits.

#### 1. Ineffective Assistance of Counsel Claim Based on Failure to Call Character Witnesses.

Following denial at the PCRA court, the Superior Court affirmed that trial

counsel was not ineffective for failing to call character witnesses at the jury trial:

> Scholl alleges his trial counsel was ineffective for failing to call character witnesses to show his reputation for peacefulness or honesty. Scholl's Br. at 11. Scholl argues that "there was no reasonable basis for trial counsel's failure to call character witnesses regarding said traits because the crux of Scholl's defense was that he did not point a firearm at police officers." *Id.* He further argues that the trial counsel's "failure to investigate the potential character witnesses identified by Scholl likely affected the outcome of the trial and served to deprive Scholl a fair trial in this matter." *Id.*
>
> When reviewing the denial of PCRA relief, we consider whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Larkin*, 235 A.3d 350, 355 (Pa. Super. 2020) (*en banc*) (quoting *Commonwealth v. Barndt*, 74 A.3d 185, 192 (Pa. Super. 2013)).
>
> We presume counsel was effective and a petitioner bears the burden of proving otherwise. *See Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017). A petitioner may overcome the presumption by pleading and proving all of the following: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness." *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011). A petitioner's failure to prove any one of these factors defeats the ineffectiveness claim. *See Commonwealth v. Dennis*, 950 A.2d 945, 954 (Pa. 2008).
>
> To prove a claim of trial counsel ineffectiveness for failure to call a witness, the defendant must plead and prove that "(1) the witness existed; (2) counsel was either aware of or should have been aware of the witness's existence; (3) the witness was willing and able to

cooperate on behalf of the defendant; and (4) the proposed testimony was necessary to avoid prejudice to the defendant." *Commonwealth v. Tharp*, 101 A.3d 736, 757 (Pa. 2014) (quoting *Commonwealth v. Bryant*, 855 A.2d 726, 746 (Pa. 2004)).

The PCRA court found trial counsel had a reasonable basis for her decision not to call character witnesses, that is, to prevent cross-examination about Scholl's prior record. PCRA Ct. Op. at 3-4. The PCRA court further concluded that Scholl did not prove prejudice, as he did not prove the trial outcome would have been different had counsel called the witnesses, noting the proposed witnesses had only known Scholl for a few months. The court noted that Scholl presented no evidence that the witnesses were available or would have testified on his behalf. *Id.* at 4-5.

The PCRA court's factual findings are supported by the record, and it did not commit legal error in finding Scholl failed to establish counsel acted unreasonably and failed to establish prejudice. Counsel testified that she did not recall discussing character witnesses with Scholl, but would have recommended against it, as the Commonwealth could have asked the witnesses about whether they knew of Scholl's prior convictions. Moreover, Scholl has failed to plead, much less prove, that specific witnesses were willing and available to give favorable character testimony, as he never provided witness certifications from any proposed character witness and did not present testimony from any such witness at the PCRA hearing.

*Scholl*, 2021 WL 798891, at *2–3.

Petitioner now raises this issue before this court. (Doc. 1, p. 6.) Considering that the state court had an opportunity to review the issue on the merits, the court will address it now.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI. The purpose of the right to the assistance of counsel is to

ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003). The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. 466 U.S. at 687. "*Strickland*'s first prong sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017). To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that

counsel failed to act 'reasonabl[y] considering all the circumstances[.]'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland*, 466 U.S. at 687. To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*. A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner

21

was not prejudiced without addressing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011). And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

In addressing Petitioner's specific claim of ineffective assistance of counsel for failing to call a character witness, the Superior Court applied the governing test for ineffective assistance of counsel claims announced by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 537 Pa. 514, 524 (1994), but the Superior Court cited to *Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011)

22

("To prevail in a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975–76 (1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.").  The United States Court of Appeals for the Third Circuit has determined that the *Pierce* test conforms to established federal law and is "not contrary to the *Strickland* test." *Henderson v. DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005) (citing *Werts v. Vaughn*, 228 F.3d 178, 203–04 (3d Cir. 2000)) (recognizing the *Pierce* test as materially identical to the *Strickland* test).  Therefore, the Superior Court's applied test is not "contrary to" the test established in *Strickland.*

Nor does the Superior Court's determinations that trial counsel provided a reasonable basis for not calling witnesses and that Petitioner failed to demonstrate any prejudice constitute an objectively unreasonable application of federal law. *See Knowles*, 556 U.S. at 123.  Petitioner has not identified any decision of the state courts which is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Petitioner, therefore, does not meet his burden of

proving ineffective assistance of counsel with respect to the failure to call character witnesses.

### 2. Ineffective Assistance of Counsel Claims That Are Procedurally Defaulted.

A federal court may not grant a writ of habeas corpus on a claim brought by an individual in custody pursuant to a state court judgment unless: (1) "the applicant has exhausted the remedies available in the courts of the State;" (2) "there is an absence of available State corrective process;" or (3) "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); *see also Wilkerson v. Sup't Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017). Section 2254(c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Thus, when a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts will typically refuse to entertain a petition for writ of habeas corpus. *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). It is the petitioner who bears the burden of establishing the exhaustion requirement has been satisfied. *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

"[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are

presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy the exhaustion requirement, a petitioner must invoke "one complete round" of the applicable state's appellate review process, thereby giving the courts of that state "one full opportunity" to resolve any issues relevant to such claims. *Id*. at 845 (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion is considered satisfied). To "fairly present" a claim, the petitioner must present his or her "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

The failure to properly present claims to the state court generally results in a procedural default. *Lines*, 208 F.3d at 150–60. "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims "unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default." *McCandless*, 172 F.3d at 260 (*citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak,* 378 F.3d 333, 339-40 (3d Cir. 2004).

Petitioner raises three other grounds for ineffective assistance of trial counsel: (1) asking the jury to convict Petitioner on all charges during the closing argument; (2) asking for a consecutive sentence during the sentencing hearing; and (3) demonstrating prejudice.  (Doc. 1, p. 6.)  He alleges that these arguments were raised in his PCRA petition, which was denied by the Court of Common Pleas and affirmed by the Superior Court.  (*Id*., p. 7.)  However, he is only partially correct. Petitioner has raised these issues in all three of his *pro se* PCRA petitions filed in state court.  (Docs. 24-2, 24-5, 24-7.)  In his initial *pro se* PCRA petition, once counsel was appointed, an amended petition was filed.  (Doc. 24-3.)  While this amended petition incorporated the claims made in the initial *pro se* PCRA petition, these issues were not addressed at the hearing or by the PCRA court.  (Doc. 24-4; Doc. 10-1, pp. 70–74.)  When the PCRA denial was appealed to the Superior Court, the only issue briefed in that appeal was the ineffective assistance of trial counsel for failing to call character witnesses.  Appellate Brief, *Commonwealth v. Scholl*, No. 357 MDA 2020, 2020 WL 7647007.  Thus, while Petitioner raised the issues before the PCRA court, they were not fairly presented to the state court for a full round of review.  The proper recourse for the PCRA court overlooking these issues was to raise them on the appeal to the Superior Court.  This was not done. Subsequent *pro se* PCRA petitions raised the issues, but these petitions were deemed untimely.  (Docs. 24-5, 24-7.)  Therefore, Petitioner failed to invoke "one

complete round" of the applicable state's appellate review process.  As such, these issues are unexhausted and procedurally defaulted.

In his traverse, Petitioner does not point to any external factor to demonstrate cause in his default.  Instead, he merely argues that his second PCRA petition was timely filed because he submitted new evidence.  (Doc. 20.) However, his new evidence is merely his conclusion that counsel in the first PCRA petition was ineffective, which the state court found did not constitute new evidence.  (*Id*.)

Petitioner alleges "a fundamental miscarriage of justice" to excuse his default as allowed in *McCandless*.  (Doc. 20, pp. 4–5.)  However, Petitioner's entire argument merely asserts legal conclusions:

> Would refusal to consider a constitutional claim due to a procedural bar result in a fundamental miscarriage of justice? If so, then the Federal Court should consider the merits of the claim.
>
> 1) Petitioner[']s underlying legal claim has arguable merit. 2) Counsel had no reasonable basis for her action or inaction and 3) The Petitioner suffered prejudice because of counsel[']s ineffectiveness.

(*Id*.)  This seemingly rhetorical question followed by three legal assertions is not sufficient to establish a fundamental miscarriage of justice under *Bousley*. Therefore, the ineffective assistance of counsel challenges are procedurally defaulted and will not be addressed further by this court.

### 3. Constitutional Challenges

Petitioner sets forth the following five constitutional challenges in his petition: (1) police officers did not follow proper knock and announce protocol; (2) police officers did not have a warrant; (3) police officers unlawfully tried to gain entry into his residence at 11:00 p.m.; (4) the court is in violation of several constitutional rights; and (5) several of the responding officers were outside of their jurisdiction.  (Doc. 1, p. 8.)  Petitioner alleges that he raised these issues in his PCRA petition, but did not appeal them "[b]ecause my PCRA attorney abandoned me and neglected to file any appeals."  (*Id*., p. 9.)  Respondents assert that this challenge has not been previously raised, resulting in it being waived.  (Doc. 10, p. 7.)

After reviewing the state court filings, these issues were raised in the initial *pro se* PCRA petition, but like the three ineffective assistance of trial counsel claims addressed in the preceding section, these constitutional claims were unaddressed following the appointment of counsel and the filing of the amended petition.  As set forth above, the proper route to exhaust these issues was to appeal the PCRA court's decision that failed to address them.  Petitioner was represented by counsel on appeal, and counsel filed an appeal to the Superior Court.  However, the appellate brief to the Superior Court did not address any of these constitutional claims.  Appellate Brief, *Commonwealth v. Scholl*, No. 357 MDA 2020, 2020 WL

7647007.  Therefore, Petitioner failed to invoke "one complete round" of

Pennsylvania's appellate review process.   These issues were also raised in the two

subsequent *pro se* PCRA petitions, but both petitions were deemed untimely.

(Doc. 24-5, 24-7.)  As such, the constitutional claims are procedurally defaulted.

Petitioner does not allege any "cause and prejudice" or "a fundamental

miscarriage of justice" to excuse his default of these claims as allowed in

*McCandless*.  Therefore, these issues are procedurally defaulted and will not be

addressed further by the court.

### CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a

certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant

has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  "When the district court denies a habeas petition on procedural grounds

without reaching the prisoner's underlying constitutional claim, a COA should

issue when the prisoner shows, at least, that jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will be issued.

## CONCLUSION

For the above stated reasons, the petition filed pursuant to Section 2254 will be denied and the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 8, 2024